Charles J. and Elizabeth H. Voigt v. Commissioner.
Charles J. v. Commissioner
Docket No. 15718.
United States Tax Court
1949 Tax Ct. Memo LEXIS 130; 8 T.C.M. (CCH) 662; T.C.M. (RIA) 49179; July 6, 1949
Armond M. Jewell, Esq., for the petitioners. Byron M. Coon, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, Judge: This case involves income taxes for the calendar years 1944 and 1945. Deficiencies were determined in the respective amounts of $384.01 and $425.58. The only issue submitted is as to the deductibility of certain items, that is, contributions, interest, taxes, losses, medical expenses and "miscellaneous and business expense." We make the following Findings of Fact The petitioners are husband and wife, residents of Inglewood, California. The Federal income tax returns for the taxable years were filed with the collector for the sixth district of California. Petitioners' returns were prepared by one Jackson from *131 information furnished by petitioners, at their home. Jackson used a printed check sheet upon which were printed general headings for contributions, interest, losses, bad debts, and "other deductions" and subdivisions, with blanks for amounts. The blanks were filled in, in pencil, in Jackson's handwriting, as was information as to medical expenses. The petitioners both belonged, in the taxable years, to the Lutheran Church. Charles J. was a butcher, working in a meat market. Requests to him for contributions were numerous. Petitioners made expenditures, under the following classifications: Contributions Under the heading of contributions petitioners claimed $229.50 for 1944 and $287.50 for 1945. They made contributions to various causes, including $7 cash and some clothing to the Salvation Army, which was some suits that their son had outgrown which they valued at $60, and some of Elizabeth Voigt's clothes. Interest Petitioners claimed payment of interest of $183 in 1944 and $126.75 for 1945. The petitioners paid interest to the Bank of America on an FHA mortgage on their home. The mortgage had been paid off at the time of trial. In the taxable years it was about $2,000. *132 They were also purchasing a car, making payments to Security National Bank. Taxes Petitioners claimed payment of taxes of $154.10 for 1944 and $167.30 for 1945. Petitioners paid taxes on their home. During the taxable years the taxes were about $54.60 and $67.20, respectively. They paid license taxes on their automobile in the amount of $9.90; they paid sales taxes on things purchased during the year such as household goods. They spent practically all of their income, on living expenses and paying off the mortgage on their home. They saved about $500 in 1945. Total income reported in their Federal income tax returns was as follows: 1944, $4,035.21; 1945, $3,842.13. Losses Under this heading the petitioners claimed $189.69 for 1944 and $308.75 for 1945. In his work as a meat cutter, Charles J. Voigt often had clothing ruined at work. He had to wear white shirts and look clean, also wore a type of smock. Blood would get upon his clothes, usually on his trousers and also on his shoes. He had an automobile accident in which three soliders crashed into the side of his car. One of them sent him $10. The bill was about $90. Petitioner claimed on that account loss of $79.69. Petitioner *133 had losses of knives stolen from the butcher shop where he worked. The knives cost from $1.25 to $5 apiece. A pint of bourbon whiskey was stolen from his car, in the parking lot. He broke his glasses by dropping them. Due to "quite a rain storm" water seeped through and affected the furnace in his home. A sheet metal worker installed a pan around the furnace. Miscellaneous and Business Expenses Petitioners claimed miscellaneous expenses of $804.75 for 1944 and $916 for 1945. Charles J. Voigt's work caused him to buy special shoes, about two pairs a year, costing from $15 to $18 a pair. He sometimes had them repaired. He used a rubber coat in delivering meat in rainy weather. He had his work clothes laundered at a cost of about $50 a year. His employer furnished the aprons and laundered them but he furnished the rest of his clothes, using white trousers which he changed about twice a week and white shirts which he changed every day. He received several trade magazines and a union publication. The petitioners owned a 1940 Oldsmobile car purchased about November 1944, for $1,200. It was used in connection with Charles J. Voigt's job. He drove the car about 7,500 miles a year. His *134 wife and son did not drive. He drove the car to and from work, parking it in the rear of the store. His employer never required him to have a car available but knew that he did so. The distance from his home to his place of business was about seven and one-half miles. The business use of the car during the day was about 20 or 30 miles a day. It was necessary for petitioner to have a telephone in connection with his business as he had to be on call at all times. He would have had a house phone anyway. He never suggested to his employer to pay part of his house telephone. He looked after the power plant and was sometimes called at night and on Sunday. He was manager of the market and made many calls. He was a member of the union and paid about $3.50 a month dues. He had insurance on his automobile. It was necessary for him to have a kit of tools and have them sharpened, at an expense of about $2.50 a month. The shop had a stone for knives. The tools were the responsibility of the butcher. Medical and Dental Expenses Petitioners claimed $61.98 ($223.50 less $161.52 as 5 per cent of income) for 1944, and $98.69 ( $245 less $146.31 as 5 per cent of income) for 1945. The $245 claimed *135 for 1945 included $60 claimed for health and accident insurance. Petitioners had expense for dental work and for an operation on a son's toe, also for removal of his tonsils late in 1945. In 1944 a Dr. Von Gelder, an optometrist, furnished glasses for the family. For that year deduction of health and accident insurance was claimed in the amount of $60. Charles J. Voigt never made a claim under that policy. Fees were paid to a Dr. Campbell in connection with teeth. Expenses during 1944 and 1945 for drugs and vitamins were about $90 a year. The petitioners had some records at the time their returns were prepared but later destroyed them. On March 3, 1947, in protest to the collector of internal revenue, with reference to the taxes for the taxable years here involved, they stated: "We are well covered with receipts and records." On February 14, 1949, the Division Counsel wrote to the petitioners with reference to Tax Court Docket No. 15718 (this case). The letter was received. It notified the petitioners, as follows: "All available receipts, cancelled checks and documents of any character relating to the deductions claimed in your return also should be secured and assembled at once *136 for use at a conference at this office or at the hearing." Opinion The record before us is very largely devoid of evidence to support the deductions claimed. Although on the March 3, 1947, protest petitioner had stated that they were well covered with receipts and records, and although on February 14, 1949, they were warned or notified by the Division Counsel, with respect to this case, that all available receipts, cancelled checks, and documents relating to deductions claimed should be secured and assembled for use at the conference or at the hearing, no documentary evidence in the form of receipts, bills, or other substantiating data was offered. This, with similarity, sometimes identity, in amounts claimed in the two years, affects credibility. We have because of such dearth of evidence been compelled to rely heavily upon the principle set forth in Cohan v. Commissioner, 39 Fed. (2d) 540, in order to work out as best we may justice for the petitioners, despite apparent lack of effort on their part to prepare their case. The income tax returns showing the items of deduction were placed in evidence. A great many of these are not touched upon at all in the evidence *137 except that the petitioner Charles J. Voigt responded "They were" in response to a leading question, in substance whether the information given Mr. Jackson (and appearing in the returns) was true or correct to the best of his knowledge and according to his records. This, of course, amounts to a mere affirmation that the returns are correct and obviously does not furnish adequate proof. Louis Halle, 7 T.C. 245, and cases cited. With the exception of the items specifically mentioned hereinafter the record contains no statements that the expenses sought to be deducted were actually paid. Many items mentioned in the evidence are mentioned without any evidence as to the amounts. Though the petitioner Charles J. Voigt testified that they had had records which had been destroyed about the time their son came home from war, apparently about 1946, such statement is not convincing in the light of the fact that later protest recited that they were well covered with records and receipts and the failure to explain why, though warned of the necessity for such at the trial, the petitioners failed to produce and made no effort to explain the lack of such confirmatory data as copies of *138 receipts or bills which obviously might have been obtained as to some of the items even though the original records had been lost; for example, duplicate tax receipts or bills from sellers of goods purchased. We will, therefore, set forth seriatim in the categories of deductions claimed our conclusions as to the amounts that can be allowed despite any reasonably adequate proof. Under the heading of contributions: Aside from the fact that the petitioners belonged to the Lutheran Church (and aside from the above-mentioned affirmation, in effect, that the returns were correct) there is no evidence whatever as to amounts contributed to the church. We allow nevertheless $40 in each of the taxable years as contributions to the church. Other items under contributions are equally unproven. Though reference is made to most of the items claimed, the amounts given, the reference is merely in answer to the question "What items of contribution did you take?"; and therefore is no statement that the amounts were ever paid. We are, therefore, unable to allow most of the items of contribution. However, there is evidence of $7 in cash and $60 at which petitioners valued clothes given to the Salvation *139 Army. We approve the deduction of the $7 cash. Since there is no basis for valuing the clothes at $60 we allow $20 as further contribution to the Salvation Army. We further approve, on the theory that they are common objects of charity, $3 contributed to Community Chest and $2 to the Tuberculosis Society. We would not be justified in allowing any other items as contributions. The above allowances are for each year. Under the heading of interest the record does not disclose the rate of interest paid, when paid, or the amounts. It does disclose, however, that the petitioners were paying interest on a mortgage of about $2,000 to the Bank of America and were purchasing a car, making payments to a bank. The car cost $1,200. The car was purchased about November 1944 so that for that year we will not speculate as to interest paid in that connection, particularly since we do not know anything except the purchase price; therefore do not know what was paid down or how much was bearing interest. No claim for interest paid on the car is made for 1945. We approve deduction of interest on the mortgage in each taxable year in the amount of $50. Under the heading of taxes there was testimony of *140 payment of about $67.50 a year paid upon petitioners' home. But the claim for 1944 is $54.60 and for 1945, $67.20. No receipts were produced. We approve in each year $50 and license taxes on the automobile in the amount of $9.90. Sales tax of $78 is claimed for each year, but since the total income for 1944 was $4,035.25 and in 1945, $3,842.13, and the California sales tax appears to be 2 1/2 per cent, and since in 1945 at least the petitioners saved about $500, and appear to have been paying upon the mortgage, so that we have allowed an interest deduction, it is apparent that the $78 figure is not justified. We allow $40 deduction of sales tax for each year. Under the heading of losses not much proof was forthcoming. Petitioner Charles J. Voigt had some clothes ruined, particularly by blood, in his business. There is no proof whatever of the value of such clothes. We approve deduction of $20 in each year for clothes ruined. No loss will be allowed because of damage done to the family car. There is no proof that it was not compensated for by insurance or otherwise within the meaning of section 23(e) of the Internal Revenue Code. This conclusion is justified *141 by the fact that a deduction is claimed upon the return for "Auto insurance." Claims for small tools stolen at work are not substantiated in any amounts whatever. However, since such losses would appear likely we approve deduction of $7.50 in each year. Claim for loss because of a rain storm ruining the petitioners' furnace is likewise disallowed because of the likelihood of insurance on the house and no proof that there was not compensation; also because the amount of loss was not shown. Claims for glasses dropped and broken, and whiskey stolen, are considered personal and not deductible. Miscellaneous business expenses: Under this heading little proof was adduced. We approve deduction of expense of $20 in each year for special shoes and $40 a year for laundering of work clothes. The cost of trade magazines and the union publication is not shown. We approve $3.50 a month deduction for union dues. With reference to the use of petitioner's car, proof is merely that he drove about 7,500 miles a year and used it both at his work and driving to and from his home which would be about 15 miles a day as against the use of 20 or 30 miles a day in business. Depreciation of $240 a year is *142 claimed. The car was a 1940 model. We allow $100 a year. Gas, oil, and repairs for the car are claimed as deductions without proof of amounts. For gas, oil, and repairs we allow $90 for each year. There is evidence that there was auto insurance but the amount is not proven. Petitioner needed a telephone in his business, but it was also used for family purposes. We allow $24 in each year. For sharpening and maintaining a kit of butcher's tools we approve $2.50 a month or $30 for each year. Under the heading of medical and dental expenses there was practically no proof of amounts paid except that drugs and vitamins cost about $90 a year. There was proof, however, of some dental work and an operation; also a tonsillectomy, and glasses furnished for the family; also that payment was made to a Dr. Campbell in connection with teeth. We approve dental and medical bills in the total amount of $125 in each year, subject to adjustment as to amount of adjusted gross income under section 23(x) of the Internal Revenue Code. Cost of insurance was not shown. For lack of proof, other claims for deduction of contributions, interest, taxes, losses, and other expenses, and medical *143 and dental expense are disallowed. Decision will be entered under Rule 50.